Glidewell v. Martin.

---

## GLIDEWELL V. MARTIN.

1. STATUTES: *Presumption as to constitutional enactment.*

Where a legislative journal recites the final passage of a bill in legal form— by a vote taken by yeas and nays—but does not affirmatively show how it was read, this court will presume that the reading was had in conformity to the Constitution, (art. 5, sec. 22), which provides that every bill shall be read at length, but does not require the fact of such reading to be shown by an entry on the journal.

2. SAME: *Repeal by implication.*

The act of January 23, 1875, section 71, [Mansf. Dig., sec. 2722], conferring on the county court jurisdiction to try contests for county and township offices, is not repealed by implication by the act of February 5, 1875,

Glidewell v. Martin.

entitled: "An act fixing the regular terms of the county courts," etc. [Mansf. Dig., sec. 1407]. *Babcock v. Helena*, 34 Ark., 499; *Coats v. Hill*, 41 Ark., 149, and *Chamberlain v. State*, 50 Ark., 132, approved and followed as to repeals by implication.

3. ELECTION CONTESTS: *Jurisdiction of county court: Act January 23, 1875, constitutional.*

The Constitution, by sec. 24, art. 19, required the legislature to designate a tribunal before which contests for county and township offices should be tried. The act of January 23, 1875, (sec. 71) conferring jurisdiction of such contests on the county court, was passed in obedience to that requirement, and is, therefore, as conclusive against constitutional objection as though written originally in the Constitution itself.

PETITION for *Writ* of *Prohibition*.

*W. L. Terry, F. T. Vaughan* and *T. B. Martin*, for petitioner.

1. The act of January 23, 1875, was never constitutionally passed. The journal affirmatively shows the second reading *by title only*. When the journal speaks presumptions cannot be indulged. 31 Ark., 718; 32 Id., 518; 33 Id., 25; Lawson Pres. Ev., p. 569, *et seq.*

2. Said act, in so far as it confers jurisdiction upon the county court to try contested election cases, is unconstitutional. Art. 7, secs. 1, 11, 28, 32, 33, as construed in 34 Ark., 193, 198. Sec. 52 was simply directed to the purpose of guaranteeing *the right of appeal* in contested election cases. Right of appeal exists only by statute—not at common law. 14 Mass., 419; 4 Neb., 572; 11 Id., 531; 19 Id., 450. This is certainly true as to contested elections, and but for sec. 52 the legislature could have cut off the right of appeal. The implication, if any, that there may be an inferior tribunal, which it is competent to clothe with jurisdiction to try these cases, is satisfied by the court of common pleas. Art. 7, secs. 1 and 32.

An election contest is a "civil case." 36 Ark., 139, and

Glidewell v. Martin.

not a "local concern." Ib., 140. If who shall fill an office is a "local concern," then 50 Ark., *Wheat v. Smith*, is wrong, for the jurisdiction of the county court would be *exclusive*.

Sec. 24, art. 19, made it simply the duty. of the legislature to provide the *mode* of contesting elections, *i. e.*, the manner—method of procedure, time, terms, conditions, etc. 29 Ark., 183.

In answer to the contention that the Constitution only fixed the "exclusive jurisdiction" of the county court and that it was therefore competent to confer other jurisdiction on it, see 4 Ark., 149; 7 Id., 173; Constitution, 1836, art. 6, sec. 15.

3. Said act is repealed by the act of February 5, 1875.

*F. M. Fulk* and *Blackwood & Williams*, for respondent.

1. The act is not repealed by act of February 5, 1875, because they are not on the same general subject and are not inconsistent. 50 Ark., 132. Repeals by implication are not favored. 41 Ark., 149; 34 Id., 499.

2. *On jurisdiction.* The county court has jurisdiction. Art. 7, sec. 28; 33 Ark., 191; 43 Id., 66; 50 Id., 271; art. 19, sec. 24; art. 7, sec. 52; 32 Ark., 557. As to modes specifically provided for, see art. 6, secs. 4, 14, 23; art. 19, sec. 19. This court has certainly recognized the jurisdiction of the county court in 32 Ark., 557, and 50 Id., 271. See, also, 29 Ark., 185.

The following cases were commenced in the county court, appealed to the circuit and thence to this court: 32 Ark., 554; 39 Id., 551; 41 Id., 239.

Unless the act is plainly and beyond a reasonable doubt unconstitutional, the courts will uphold it. 99 U. S., 718;

107 U. S., 766; 50 Penn. St., 150; 24 Ind., 194; 13 Mich., 483; Cooley Const. Lim., 194.

If "local concerns" is broad enough to give the legislature the right to give jurisdiction to county courts, then, if the circuit court as the "great residuum," could also be chosen as such forum, an act conferring exclusive jurisdiction on the county court would not be void, but both courts might be made separate forums. 34 Ark., 199. But if the Constitution simply made it the duty of the legislature to provide *some* board, * * * tribunal before which contests should be had, when that was done it became exclusive. Cases *supra*, and 29 Ark., 186; 15 Oh. St., 114.

3. On the passage of the law. 33 Ark., 17; 28 Id., 320; 44 Id., 536; 40 Id., 208; 25 Ill., 183; 2 Minn., 337; 10 Nev., 176; Cooley Const. Lim., 164.

*Compton & Compton* and *Samuel R. Allen, Amici Curiae.*

1. The act is Constitutional and valid. The jurisdiction given is nowhere in the Constitution expressly prohibited, nor even impliedly. On the contrary, the Constitution expressly directs the legislature to provide for the mode of contesting elections. Art. 6, sec. 4; art. 19, sec. 24; art. 7, sec. 52; art. 7, sec. 28; art. 7, sec. 11.

When jurisdiction in contested elections is conferred upon a particular tribunal, it is exclusive. 28 Ark., 129; 29 Id., 173. Considering this principle in connection with sec. 24, art. 19; sec. 28, art. 7, and sec. 11, art. 7, it follows: The jurisdiction conferred by the act, pursuant to sec. 24, art. 19, is exclusive. It is the same as if written in the Constitution itself. 15 Oh. St., 114, and the jurisdiction so vested does not belong to that residuum conferred on circuit courts by sec. 11. art. 7.

The framers of the Constitution evidently contemplated

that the legislature, under sec. 24, art. 19, might confer ju-
risdiction, as to county and township officers, on a tribunal
inferior to the circuit court, for, by sec. 52, art. 7, an appeal
is expressly provided for, which would be without meaning
and inoperative if they intended that the circuit court should
have original jurisdiction in such cases.

Sec. 24, art. 19, does not relate only to the mode of
procedure, but also to the tribunal, and this is manifest from
the clause: ''In cases not specifically provided for in this
Constitution,'' which necessarily refers to sec. 4, art. 6.

2. It needs no argument to show that the act was not re-
pealed by act of February, 1875.

3. The legal presumption is that the act of January 23,
1875, was passed in accordance with the requirements of the
Constitution, notwithstanding the journal of the senate shows
that a motion was made and adopted to read the bill a sec-
ond time by title. The journal does not affirmatively show
that it was so read, but is silent as to whether it was, in fact,
read in any way; and this silence warrants the presumption
that the bill was read according to the requirements of the
Constitution. 40 Ark., 200; 44 Id., 536; 27 Id., 278;
42 Tex., 641; 3 Oh. St., 475; 11 Ind., 424.

To uphold the act, this court will presume that the senate
receded from its motion to read by title. 40 Ark., 213, 214.

SANDELS, J.

Petitioner H. E. Glidewell, alleges that the circuit court
of Pulaski county is proceeding in a matter beyond its juris-
diction; that it is about to try and determine upon an appeal
from the county court of Pulaski county, an election contest
for the office of county treasurer of Pulaski county, brought
against petitioner by one T. H. Jones, under the pretended
authority of the pretended act of the legislature of Arkansas,

entitled: "An act providing a general election law," approved January 23, 1875.

The circuit judge responds and demurs to the petition. From the petition (the statements of fact being conceded by the demurrer) and from the journals of the senate and house of representatives of the general assembly the following matters appear:

Glidewell holds the office of county treasurer. Jones began a contest for the office in the Pulaski county court; Glidewell objecting.

The contest was tried and an appeal was taken to the circuit court. Petitioner moved to dismiss, because the county court having no jurisdiction, the circuit court acquired none on appeal.

The circuit court overruled said motion and ordered that the trial proceed.

By the journal of the senate, it appears that the act of January 23, 1875, was introduced in the senate as senate bill, No. 54, on November 27, 1874, when it was read the first time. The journal thereupon says: "Senator Hicks moved a suspension of the rules, and the reading of the bill a second time by title. Adopted."

"Senator Hicks then moved that the bill be referred to committee on elections, and that 240 copies be printed. Carried."

On December 16, 1874, the journal shows:

"Mr. Hicks, under the regular order of business, moved that senate bill No. 54, an act providing a general election law, be read a third time, and placed on its final passage, which was adopted."

"The question being put: 'Shall the bill pass?' it was decided in the affirmative. Yeas, 24. Nays, none. Not

Glidewell v. Martin.

voting, 7. So the bill was passed." The yeas and nays are entered on the journal. The act was approved January 23, 1875.

Section 71 of said act, being section 2722 of Mansfield's Digest, is as follows:

"When the election of any clerk of the circuit court, sheriff, coroner, county surveyor, county treasurer, county assessor, justice of the peace, constable, or any other county or township officer, the contest of which is not otherwise provided for, shall be contested, it shall be before the county court, and the person contesting," etc.

Petitioner presents three objections to the jurisdiction of said circuit court, viz:

1st. Said general election law was never constitutionally passed in this, that it was never read *at length* three times in the senate.

2nd. That if said act *was* ever legally passed, it was repealed by the act of February 5, 1875, entitled: "An act fixing the regular terms for holding the county courts of the State, and for fixing the salaries of the county judges, and the *per diem* pay of the associate justices of the several counties of this State."

3rd. That the legislature had no constitutional power to confer jurisdiction upon the county courts to try election contests.

We will consider the questions in their order:

1. Sec. 22, art. 5, of the Constitution (1874) is as follows:

"Every bill shall be read at length on three different days, in each house, unless the rules be suspended by two-thirds of the house, when the same may be read a second or a third time on the same day; and no bill shall become a law unless

on its final passage, the vote be taken by yeas and nays; the names of the persons voting for and against the same *be entered on the journal and a majority of each house be recorded thereon as voting in its favor.*"

1. STATUTES:    This is the only requirement as to what shall go upon the
Presumption as to con- journals.    The bill must be read at length, but the journal
stitutional
enactment. is not required to show conformity to this requirement.

From considerations of public policy and because of the respect due the action of a co-ordinate department of government, the courts long since began to supply the omissions of journal clerks by presumptions as to the regularity of the proceedings of the general assembly.    This has been found most salutary; and the attitude assumed by the judiciary in this regard, has gone far toward establishing and maintaining public confidence in the stability of legislative action. Many cases of flagrant hardship are thus prevented, while, by the operation of the rule, few, if any, have sustained substantial injury.    The courts are gravitating toward the English rule, so thoroughly discussed by Mr. Justice Smith, in *Chicot County v. Davis*, 40 Ark., 200; for, while they say that the enrolled bill is not conclusive of the valid enactment of a law, and that we may look beyond it to the journals, they supply by presumption everything necessary to its validity, save where the journal *affirmatively* shows a violation of the Constitution.

In this case the journal shows affirmatively but *one* reading of the bill No. 54 in the senate.    It was argued that the journal shows the second reading, and shows it to have been by title and not at length.    The entry is: "Senator Hicks moved a suspension of the rules and a reading of the bill a second time by title.    Adopted."

This is not an affirmative showing of the *fact* of reading

by title or otherwise; for, while from the adoption of the motion, it might be *presumed* that the reading followed, the court will not indulge the *presumption* that the senate acted in violation of its sworn duty.

It will indulge, rather, the presumption, arising from the recitals of a final passage in legal form, that the readings were had in accordance with law. *Vissant v. Knox*, 27 Ark., 279; *English v. Oliver*, 28 Ark., 317; *State v. L. R., M. R. & T. Ry.*, 31 Ark., 717; *Worthen v. Badgett*, 32 Ark., 516, 518; *Smithee v. Garth*, 33 Ark., 25, 26; *Chicot Co. v. Davis*, 40 Ark., 200; *Webster v. City, etc.*, 44 Ark., 536; *Blessing v. Galveston*, 42 Texas, 641; *Miller v. State*, 3 Oh. St.; 475; *McCulloch v. State*, 11 Ind., 424; *Weyand v. Stover*, 15 Pac. Rep., 229. Upon these and many other authorities, we hold that the act of January 23, 1875, was constitutionally passed.

2nd. The act of January 23, 1875, was not repealed by the act of February 5, 1875. The rule by which we are guided is well stated in the following cases: *Babcock v. City Helena*, 34 Ark., 499; *Coats v. Hill*, 41 Ark., 149; *Chamberlain v. State*, 50 Ark., 132.

*2. Repeals by implication.*

The implication by which a repeal is sought to be established, is forced and strained—not "necessary."

3rd. Had the legislature power to confer jurisdiction upon the county court to try contested election cases, as provided in section 71, of the act of January 23, 1875?

Sec. 9, art. 6, Const. 1836, and sec. 11, art. 7, Const. 1864, were as follows:

"There shall be established in each county in this State, a court to be holden by the justices of the peace, and called the county court, which shall have jurisdiction in all matters relating to county taxes, disbursements of money for county

purposes, and in every other case that may be necesssry to the internal improvement and local concerns of the respective counties.''

Sec. 28, art. 7, Const. 1874, is as follows:

''The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided.''

Sec. 11, art. 7, Constitution of 1874, is as follows:

''The circuit court shall have jurisdiction in all civil or criminal cases, the exclusive jurisdiction of which may not be invested in some other court provided for by this Constitution.''

Sec. 4, art. 6, Const. 1874, is:

''Contested elections of governor, secretary of state, treasurer of state, auditor of state and attorney general, shall be determined by the members of both houses of the general assembly in joint session, who shall have exclusive jurisdiction in trying and determining the same, except as hereinafter provided in the case of special elections; and all such contests shall be tried and determined at the first session of the general assembly after the election in which the case may have arisen.''

Sec. 24, art. 19, and sec. 52, art. 7, are as follows:

''The general assembly shall provide by law the mode for contesting elections in cases not specifically provided for in this Constitution.''   Art. 19, sec. 24.

''That in all cases of contest for any county, township or

municipal office, an appeal shall lie at the instance of the party aggrieved, from any inferior board, council, or tribunal to the circuit court, on the same terms and conditions on which appeals may be granted to the circuit court in other cases, and on such appeals the case shall be tried '*de novo.*' " Art. 7, sec. 52.

Sec. 9, art. 3, provides that in contested election cases, witnesses shall be compelled to testify without regard to whether they thereby be subjected to public infamy.

The right to try contests in election cases is thus clearly recognized by the Constitution. Where shall they be tried?

Just after the adoption of the Constitution of 1836, containing the section above quoted, the legislature passed an act providing that all contests for county offices, naming them, except county judge and school commissioner, should be in the county court.

So far as we are aware, but one case, under that act, came to this court. *Vance, et al., v. Gaylor, et al.,* 25 Ark.. 32.

In that case, a county judge, sheriff, county clerk, county treasurer and school commissioner gave joint notice to their several opponents for these offices, and made a joint contest in the county court. It was held, *first*, that the notices should have been several, and, *second*, on objection to the jurisdiction of the county court, that, while the county court *had* jurisdiction as to the *sheriff, clerk* and *treasurer*, it had none as to the county judge and school commissioner, because they were not included in the act. The law stood for nearly forty years without further challenge in this court.

The provision of the constitution of 1874, defining the jurisdiction of the county court is in all matters of substance, identical with the provisions on the same subject in the constitutions of 1836 and 1864. And section 71 of the act of 1875 is identical with the act of 1838.

The intent and meaning of those who frame constitutions and statutes is often most satisfactorily ascertained by reference to the history of antecedent legislation on the same subject, and the interpretations put upon it by the courts. Endlich on Interpretation of Statutes, sec. 520; *Baker v. State*, 44 Ark., 137; Board of Equalization Cases, 49 Ark., 525.

In framing the section giving the county court its jurisdiction the convention of 1874 had in view the history and interpretation of similar provisions in former constitutions, and knew that the grant of jurisdiction to the county courts under them, to try contested elections, had been sanctioned by this court.

Influenced by this view, it would not be strange that the grant of such jurisdiction, as the county court had previously exercised, was contemplated by the framers of this constitution. ''The essential qualities of all constitutional courts are indestructible and unalterable by the legislature. But an extension of the jurisdiction of a court, such extension being in harmony with its character, and not being a usurpation on the inherent powers of any other court, is not within the constitutional *prevention*.'' *Harris v. Vanderveers, Ex.*, 21 New Jersey Eq., 428.

3. ELECTION CONTESTS: Jurisdiction of county court. By the constitution but one forum is designated in which a contested election may be tried, *i. e.*, the legislature, in contests for the office of Governor, Sec. of State, Treasurer of State, Auditor of State and Attorney General. Sec. 4, art. 6,

But by sec. 24, art. 19, it is required that the legislature provide a *mode* of contesitng elections.

It is patent that the legislature was expected to confer this jurisdiction upon some *board, council or tribunal* which might be inferior to the circuit court. Sec. 52, art. 7.

Glidewell v. Martin.

If the section last quoted means anything, it means this; and with this meaning all questions as to the signification of the word "mode," in sec. 24, art. 19, vanishes.  It means *place* as well as manner of trial.  It is urged that it was intended that the legislature should give this jurisdiction to the courts of common pleas, but it can never be presumed that the execution of the mandate of section 24, was to be dependent upon the creation of a court which might never be called into being.

. It is not necessary to consider the question raised and argued upon some expressions in the opinion in *Devers v. State*, 34 Ark., 188, as to inability of the county court to receive additional jurisdiction by grant from the legislature.

It cannot be questioned that the convention might have included in the jurisdiction of the county court, the right to try election contests, nor can their power to require the legislature to do so, be doubted.  For some good reason the convention required the legislature to name the court, council or board before which these trials should be.

The act of 1875, sec. 71, was a compliance with this re- Act of 1875 constitutional. quirement.  The act does not stand upon the same footing with ordinary legislation emanating from general powers, but rests upon the specific mandate contained in sec. 24, art. 19.

As such it became as conclusive against constitutional objections as though written originally in the constitution itself. *Grissell v. Marlow*, 15 Ohio State Reports, 114.

This court has held the jurisdiction to be in the county court.  *Govan v. Jackson*, 32 Ark., 556.

And it has been tacitly conceded in many cases.  *Wheat v. Smith*, 50 Ark., 266, and many other cases.

Holding that neither of the three grounds stated in the petition is tenable the writ is denied.