ATHLETIC MINING & SMELTING COMPANY *v.* SHARP.

## Opinion delivered July 8, 1918.

1. STATUTE—MISTAKE IN ENROLLMENT—EFFECT.—The words included in brackets in the fourth and fifth lines of section 2 of act 175 of Acts 1913 were properly inserted in the printed act, being a part of the act as passed and inadvertently omitted by the enrolling clerk.

2. MASTER AND SERVANT—STATUTORY PROVISION—CONTRIBUTORY NEGLIGENCE.—Under Acts 1913, c. 175, § 2, the defense of contributory negligence is eliminated from all actions by employees for personal injuries received while employed by corporations not engaged in interstate commerce, and is not confined to injuries in death cases only.

3. MASTER AND SERVANT—ASSUMED RISK.—In an action for personal injuries to an employee alleged to be due to the negligence of the employer in starting a rabble rake without giving notice to such employee, it can not be said as a matter of law that employee in working where the rabble rake moved assumed the risk of danger therefrom by voluntarily standing in its proximity, in view of evidence that the work the employee was directed to do could not have been done elsewhere.

4. SAME—ASSUMED RISK.—It can not be said as matter of law that an employee assumed risk from being caught by a revolving rabble rake because he knew that the rabble rakes would begin to move in a minute or two where there was evidence that the rabble rakes had not been in operation for a considerable time, and there was a custom in such cases to give notice before starting the rabble rakes.

5. SAME—ASSUMED RISK.—The fact that the rabble rake which injured plaintiff was hot did not tend to prove that it was actually in operation at the time plaintiff took his position in its proximity and that therefore plaintiff knew and assumed the risk from its movement, as the rake was of metal and might have retained heat for a considerable length of time.

6. SAME—ASSUMED RISK.—It can not be said as matter of law that plaintiff assumed the risk of being injured by the movement of a rabble rake because he was in a position to see its approach and knew of the dangers incident to same where evidence tended to prove that his work engrossed plaintiff's attention, that the operation of the rabble rake was without noise, and that he depended upon notice or warning in case the rabble rakes should be put in motion.

7. SAME—NEGLIGENCE—INSTRUCTIONS.—Where a complaint seeking recovery for personal injuries alleged three different acts of neg-

ligence as grounds of recovery, but the evidence narrowed the issue to one of the alleged grounds, instructions to the effect that if plaintiff established any one of the allegations of negligence the jury might find for plaintiff were erroneous and calculated to mislead the jury.

8. SAME—ASSUMED RISK—INSTRUCTION.—An instruction to the effect that if the plaintiff acted with ordinary care in working where he did, he did not assume the risk in so doing *held* to confuse the defenses of contributory negligence and assumed risk and to be misleading.

9. SAME—ASSUMED RISK—INSTRUCTION.—An instruction, in an action by an employee for personal injuries, which told the jury that plaintiff assumed the ordinary risk and hazard incident to the employment, but not the dangers resulting from the negligence of the employer, was erroneous, as the employee assumed the risk of the employer's negligence if he knew of such negligence and appreciated the danger ·therefrom.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; reversed.

*James B. McDonough,* for appellant.

1.   There is no substantial evidence of negligence and plaintiff assumed the risk as matter of law. A peremptory instruction should have been given for defendant.  122 Ark. 445.  But plaintiff was guilty of negligence and assumed the risk.  No negligence of defendant or its employees was proven.  The rabble rake was in operation.  The physical facts show this.  79 Ark. 608.  There was no duty to warn, plaintiff knew the circumstances.  Plaintiff can not recover as a matter of law.  The master did not know of the danger.  35 Ark. 602.  No could it have been foreseen.  708 *Id.* 488; 113 *Id.* 60; 84 *Id.* 377; 71 *Id.* 445; 118 *Id.* 49.  No structural defect is shown.  Plaintiff gave no notice that he would place himself in a dangerous place.  100 *Id.* 156.

2.   Plaintiff assumed the risk.  101 Ark. 197; 98 *Id.* 202; 106 *Id.* 436; 102 *Id.* 631; 104 *Id.* 489.

3.   The court erred in admitting evidence that it was customary to have a man stand at the north end of the kiln to give warning.  168 S. W. 129; 108 Ark. 483; *St. L., I. M. & So. Ry.* v. *Steed,* 105 Ark.

4. It was error to give instruction No. 1. There was no evidence of negligence because the bull wheel was so near the form. It was the duty of the court to state the issues as to the three allegations of negligence and this instruction did not.

5. It was error to give No. 2. It is abstract and misleading and did not submit the proper issue as to the duty to give warning. It instructs that defendant owed plaintiff the duty of using ordinary care to maintain a reasonably safe place for him to work.

6. It was error to give No. 4. It is an attempt to define assumed risk. It is an erroneous declaration of law. As to the similarity and dissimilarity between contributory negligence and assumed risk, see 88 Ark. 243; 77 *Id.* 367; 99 *Id.* 377; 105 *Id.* 533; 104 *Id.* 489; 98 *Id.* 211; 159 Pac. 1132.

7. There was error in giving Nos. 7 and 8 as to negligence and contributory negligence. Acts 1913, p. 734; 181 S. W. 290. The Secretary of State had no authority to insert the words used after the word "injuries." It was the intention of the Legislature to take away the defense of contributory negligence only in death cases.

8. It was error to refuse No. 4 for defendant. It properly presented the question of assumed risk and there was evidence to support it.

*Oglesby, Cravens & Oglesby,* for appellee.

1. Whether defendant was negligent in not exercising ordinary care to furnish and keep the place where plaintiff worked in a reasonably safe condition, and whether negligent in its operation of its rabble rake was for the jury and they have settled it, unless there is no testimony to support it. The evidence shows negligence. If plaintiff's evidence is true, and the jury so found, the verdict should stand. Plaintiff did not voluntarily put himself in a place of danger, he could not do the work in any other way. No warning was given. Plaintiff was put to work by the foreman in a place of danger.

2. There is nothing upon which to base the defense of assumed risk. This question was properly submitted

to the jury and their verdict settles this question. No new principle of law is found in the cases cited by appellant.

3. The motion for new trial is not set out in appellant's abstract, and this court will not consider the errors, if any, as to the admission or exclusion of testimony, etc.

4. There is no error in giving or refusing instructions. The objections are without merit. If the issues were not sufficiently stated, proper requests should have been made. The questions of negligence, contributory negligence and assumed risk were properly submitted. 75 Ark. 76; 98 *Id.* 211; 84 *Id.* 74; 77 *Id.* 367; 111 *Id.* 83. No prejudicial error appears. The verdict is amply sustained by the evidence.

*James B. McDonough,* for appellant in reply.

1. Sets out in full the motion for new trial and reviews the evidence and contends that plaintiff voluntarily took a place of danger and assumed the risk. 202 S. W. 824.

2. On error in instructions cites 98 Ark. 211; Thompson on Negl., § 4611, 4634; *Ib.* 4608; 20 Am. & Eng. Enc. Law, 109; 26 Cyc. 1177; 116 Ill. Rep. 296; 126 Fed. 495; 63 L. R. A. 551.

3. The doctrine of contributory negligence is not destroyed in Arkansas as to corporations except in cases of death. Acts 1913, p. 174; 122 Ark. 491. The Secretary of State was unauthorized to amend the act.

HUMPHREYS, J. Appellee instituted suit against appellant in the circuit court of the Fort Smith District of Sebastian County to recover damages in the sum of $3,000 for an injury received, due to the alleged negligence of appellant in constructing a track and bull wheel for its smelter in such close proximity to a supporting form for a pier of an ore dryer as to make it necessarily dangerous and hazardous for its employees to construct a pier; in operating the rabble rake and bull wheel; and in starting the rabble rake without giving notice or warning to appellee.

Appellant answered, denying that appellee received the injury through its negligence and pleaded an assumption of the risk and contributory negligence by appellee.

The cause was submitted to the jury upon the pleadings, evidence and instructions of the court. The jury returned a verdict in favor of appellee against appellant in the sum of $2,750, and a judgment was rendered in accordance therewith, from which an appeal has been duly prosecuted to this court.

At the time the injury occurred, appellant was constructing a smelting plant in South Fort Smith. The particular part of the plant where the injury occurred, consisting of bull wheels, rabble rakes, a track, cable, kiln, forms, crusher, controller platform, etc., was described by several of the witnesses, and, from their descriptions, appellant diagrammed the various parts of the machinery and the immediate surroundings. The correctness of the diagram, as descriptive of the wheels, rabble rake and immediate surroundings, is not questioned by appellee, so we incorporate it in this opinion as it is an aid to understanding the situation and operation of the machinery where the injury occurred.

The rabble rakes moved from north to south through the kiln for the purpose of stirring the hot ore. When in operation, the rakes moved slowly, taking five or six minutes to make a complete revolution. In making the revolution, and included in this time, two minutes were invariably consumed in stopping the rabble rake immediately after it passed through the kiln for cooling purposes. The molten mass of ore in the kiln heated the rakes to a red heat when they were passing through it. The rakes were made of metal and would hold the heat imparted to them when in the kiln. Form "H" was a hollow construction, eighteen by twenty inches square, five feet high, braced on the north and west sides, and was made for the purpose of receiving and holding in shape the soft cement until it hardened into a supporting pier for the ore-dryer, which was to rest upon this and other

piers of the same character. Rods or bolts were to be imbedded in the cement piers, and for the purpose of accomplishing this, it was necessary to hang the bolts or rods in the forms before putting the soft cement in them. Appellee was a carpenter, experienced in the construction of plants of this character, and had worked prior to this time in this capacity for appellant. On the morning of the injury, he was working on the controller platform north and east of the north bull wheel when he and R. V. Denson were directed by the foreman to hang the rods or bolts in forms "H" and "I" to the northwest of the north bull wheel. R. V. Denson went to form "I" and appellee to form "H" to do this work. Form "H" was within two or three inches of the track upon which the trucks supporting the rabble rakes moved, and a person standing either on the east or west side of the form would be in danger from the right wing of the rabble rake when passing. Appellee knew the close proximity of this form to the track and the dangers incident to the performance of this labor if standing either on the east or south side of the form when the rabble rakes were in motion. He also knew that if the rabble rakes were not being operated no danger could result to him from them while standing on either the east or west side of said form to perform the labor. In order to hang the rods or bolts in the form, he stood on two stakes at the southeast corner of the form with his back to the track, looking down into the hollow form. There was evidence tending to show that he could have taken his position on the north or west side of the form to do this work, but there was evidence tending to show that he could not do so on account of braces on those two sides. A crusher located a short distance to the west of the forms was being operated at the time the injury occurred. This crusher, when in operation, made a great noise. The rabble rakes in operation made little or no noise. The operator of the rabble rakes was operating the machinery from point "K" to the southwest of the south bull wheel and could not see one who was working at form "H." Ordinarily,

the operator would have stood at the controller platform to the northeast of the north bull wheel, but this platform had not been completed. Appellee knew of this fact. The evidence was conflicting as to how long appellee had been working at form "H" before the injury occurred. It ranged over a period of thirty minutes. Plows were attached to the wings of the two rabble rakes equidistant in the circle, and it was not shown how long they would retain heat after passing through the kiln. These plows were for the purpose of stirring the molten mass of metal in the kiln. There was evidence tending to show that the kiln had been in operation for thirty days, and that the rabble rakes were in operation night and day, and had been in operation during the entire night preceding the injury, and were in operation during the morning the injury occurred. There was evidence also tending to show that the rabble rakes had not been in operation during the morning the injury occurred. Appellee's clothing was not burned, but his body was burned to some extent. There was evidence tending to show that when the rabble rakes were stopped for any considerable time, beyond the two minutes they were always stopped in the course of operation, that a notice or warning was given before starting them again. While appellee was thus engaged in hanging the rods or bolts, he was caught by the right wing of a rabble rake and held and pressed against the form by it. He could not extricate himself, and, in order to get him out, the workmen had to tear down the form.

It is impractical to set all the facts out in this opinion, so we have endeavored to set out what we regard as a summary of the facts after a careful reading of the record. It may be necessary in the course of the opinion to refer to and set out other facts which have been omitted from this statement.

Based upon this state of fact, appellant contends that under the undisputed facts appellee was guilty of contributory negligence and that he assumed the risk incident to the work he was doing at the time he received the

injury. It is said by appellant that contributory negligence on the part of appellee in the instant case is a complete defense because the statute on comparative negligence, removing contributory negligence as a complete defense to a cause of action, applies to injuries resulting in death only. It is said that the words included in brackets in the fourth and fifth lines of section 2, Act 175, Acts 1913, were placed in the act by the Secretary of State without authority and that when the section is read, eliminating those words, it is clear that the Legislature intended to take away the defense of contributory negligence only in death cases brought against corporations for damages. Eliminating those words from the section, appellant is perhaps correct in his contention that the act would apply only in death cases, but, upon examination of the original act in the office of the Secretary of State, we find that those words, inserted by the Secretary of State, were a part of the act, and were inadvertently omitted from the enrolled bill by the enrolling clerk. Without the use of the words inclosed in brackets, the section is almost meaningless or at least quite ambiguous. The failure to insert the words was an obvious omission or misprision of the enrolling clerk. The Secretary of State therefore properly inserted them in the printed act. The act, therefore, applies to all injuries inflicted by a corporation and is not confined to injuries in death cases only.

It is said by appellant that appellee assumed the risk because the undisputed facts show that he voluntarily placed himself in a dangerous position by standing on the east side instead of taking a position on the north or west side of the form where the rabble rake could not have touched him. This position is unsound because the undisputed evidence does not show that appellee could have stood on either the north or west side and performed this work. The braces holding the form were on those sides, and it is not certain that he could have stood between the braces and the form or on the outside of the braces to do the work.

It is further said by appellant that appellee took his position where he did knowing that the rabble rake was in operation or would begin to move in a minute or two and fully appreciated that the wing of the rabble rake must necessarily catch and crush him if he remained in that position until it reached him.    This position is not well taken for the reason that the evidence tends to show that the rabble rakes were not in operation and had not been for a considerable time, and that there was a custom to give notice or warning to all employees when the rabble rakes had been stopped beyond the period of two minutes for cooling purposes.

But appellant says that the evidence to the effect that the wing of the rabble rake was hot was proof conclusive that the rabble rakes were in operation at the time appellee took his position at the form to place the bolts.    It does not necessarily follow that because the wing of the rabble rake that struck him was hot that they had not been stopped for a considerable length of time beyond the ordinary stop of two minutes for cooling purposes.    They were composed of metal and might have retained heat for a considerable length of time.    The evidence was conflicting as to how hot the wing was when it pinned him to the form.

It is further said that because appellee was in a position where he could see and should have seen the approach of the rabble rake and was fully cognizant of the dangers incident to its approach, and because of the further fact that he did not depend upon notice or warning in case the rabble rake should start, that he necessarily assumed the risk incident to the performance of the work. The undisputed evidence does not show this state of case. There is some evidence to the effect that it was necessary for him to look down into the form in order to place the bolts; that the crusher was being operated with great noise; that the operation of the rabble rake was without noise; and that the appellee did depend upon a notice or warning in case the rabble rakes should be put in operation.

It is insisted that the court erred in telling the jury in instructions Nos. 1 and 2 that if appellee established any one of the allegations of negligence alleged in the complaint they might find for appellee. The facts in this case narrowed the issue of negligence to the sole question of whether appellant was guilty of negligence in starting the rabble rakes without giving notice to appellee. There was no substantial evidence introduced tending to show that appellant was negligent in constructing form "H" near the track, or in the operation of the machinery. The instructions were abstract in so far as the first and second grounds of negligence alleged in the complaint were concerned. There is no proof upon which to present them as issues to the jury. There might be some force in the suggestion of counsel for appellee that the error complained of in the first instruction was a matter of form and that it was the duty of appellant to specifically object to the instruction because it submitted all the issues of negligence alleged in the complaint to the jury, if the erroneous submission of those issues had not again been reiterated and reaffirmed in instruction No. 2. We think where the error appeared in both instructions and was specially emphasized in the second instruction that it was calculated to mislead the jury.

It is insisted by appellant that the court erred in giving instruction No. 4, requested on motion of appellee. Said instruction is as follows:

"4. If the jury believe from the evidence that a man of ordinary prudence and caution for his own safety, situated as was the plaintiff, and having his knowledge and information, or such knowledge and information as the evidence shows by ordinary care he should have had, and being engaged in his occupation, would have gone to the place where the evidence shows he was working to perform the work he was called upon to do, then this would not constitute assumption of risk on his part."

We think this instruction told the jury in so many words that if the appellee exercised due care he did not

assume the risk. Putting it in another form, we think the instruction was to the effect that if appellee was not guilty of contributory negligence he could not assume the risk. This instruction was inherently wrong because this court has committed itself to the doctrine that an employee may assume the risk incident to his employment, though not guilty of contributory negligence in the performance of the work. There is a well-defined distinction between contributory negligence and assumed risk, and it is misleading to tell a jury that they are one and the same thing.

"The defenses of assumed risk and contributory negligence are separate and independent; the former arising out of contract, while the latter does not." *St. Louis. I. M. & S. R. Co.* v. *Brogan,* 105 Ark. 533; *E. L. Bruce Co.* v. *Yax,* 135 Ark. 480.

Instruction No. 5, given on motion of plaintiff, is also erroneous. Instruction No. 5, in effect, told the jury that appellee assumed the ordinary risk and hazard incident to the employment, but that the assumption did not include the dangers resulting from the negligence of appellant. This is error because such assumption of risk would include the negligence of appellant if appellee knew of the negligence and appreciated the danger incident to the service.

It will not do to say that errors contained in these instructions were cured by other instructions correctly defining the doctrines of "assumed risk" and "contributory negligence." These errors were calculated to bewilder the jury and mislead it.

The instructions should have limited the issue to the alleged negligence in starting the machinery without giving notice or warning to the employees, and should have correctly defined the law on assumed risk.

The cause must be reversed on account of errors pointed out, so we deem it unnecessary to discuss the other assignments of error.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

SMITH, J., dissenting.