RICE v. LONOKE-CABOT ROAD IMPROVEMENT DISTRICT
No. 11 OF LONOKE COUNTY.

Opinion delivered March 1, 1920.

1. STATUTES—PRESENTATION OF BILL TO GOVERNOR.—Where the contrary does not appear from the records of the General Assembly, it will be presumed that the Senate enrolling committee performed its duty, under Constitution, article 6, section 15, by presenting a bill within the required time to the Governor for his consideration and approval or rejection.

2. STATUTES—PRESUMPTION AS TO TIME OF PRESENTATION.—Though a bill was approved by the Governor more than 20 days after adjournment of the Legislature, it will be presumed that it was presented to the Governor within 20 days, as it will be presumed that the enrolling committee performed its duty.

3. CONSTITUTIONAL LAW—PRESUMPTIONS AS TO STATUTES.—Presumptions should be indulged to uphold the validity of laws, and not to strike them down.

4. STATUTES—TIME OF APPROVAL.—Under Constitution, article 6, section 15, the approval of a bill by the Governor after the time fixed by law for his approval, namely 20 days, was unauthorized and did not affect the bill, which had already become a law without his approval.

5. STATUTES—ENROLLED BILL.—An "enrolled bill" in legislative parlance, is a reproduction or copy of the identical bill passed by both houses of the General Assembly.

6. STATUTES—MODIFICATION OF BILL.—The enrolling clerk or committee has no power or authority to modify a bill passed by the General Assembly in any respect.

7. STATUTES—APPROVAL OF BILL.—The purpose of the Governor in signing an enrolled bill or in permitting a bill to become a law without his signature is to approve the identical bill passed by the Legislature, and the effect of his act is not impaired or invalidated by additions, omissions or misprisions of the enrolling clerk in copying the bill.

8. STATUTES—IMPEACHMENT OF ENROLLED BILL.—An enrolled bill is not conclusive of the enactment, and may be impeached by an inspection of the original bill, by indorsements thereon, by the journals and other official records in the office of the Secretary of State.

9. STATUTES—OMISSION IN ENROLLED BILL.—Road Laws 1919, volume 2, No. 669, creating a road improvement district, held not invalid because the enrolled bill signed by the Governor omitted the description of land embraced in the district; the omission being an obvious clerical error.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Carmichael & Brooks,* for appellant.

The bill that passed the House and Senate was not signed by the Governor, and the bill signed by the Governor did not pass the House and Senate. 41 Ark. 475; 72 *Id.* 569; 49 *Id.* 333; 83 *Id.* 465; 86 *Id.* 529; 71 *Id.* 541.

*Chas. A. Walls,* for appellee.

The records show that every constitutional requirement with reference to the passage of the bill was met. The cases cited by appellant have no application. There is no question but that the enrolling clerk inadvertently omitted certain sections of land in copying the original bill, but the Secretary of State printed the act correctly from the original bill and it was published correctly. It was an obvious clerical error and the Governor intended to approve the bill passed by both houses. The case in 34 Ark. 263 controls this. 40 *Id.* 211; 51 *Id.* 566; 61 *Id.* 240. It is the duty of the courts to ascertain the intention of the Legislature and ignore mere clerical errors. 54 *Id.* 172, 240-1; 72 *Id.* 565. Mere clerical errors do not invalidate an act. 163 Ark. 109; 133 *Id.* 64; 130 *Id.* 503; 136 *Id.* 524; 131 *Id.* 295. Courts have the right and it is their duty to correct mistakes like this. 34 Ark. 263. Act 669 as printed by the Secretary of State is the law, and the omission of land by the enrolling clerk was a clerical error, and the decree should be affirmed.

HUMPHREYS, J. Appellant, and others similarly situated, instituted suit against appellee in the Lonoke Chancery Court to enjoin the Board of Commissioners of the appellee district, and the assessors of said board, from proceeding to build, or attempting to build, any road within the proposed district, upon the ground that Act 669 of the Acts of 1919 of the Legislature of Arkansas, under which said district was created, is void, for the alleged reasons, *first,* that the

bill was not presented to the Governor for approval within the time required by law; *second,* that the enrolled bill signed by the Governor was different from the engrossed bill passed by the Legislature, in this, that nineteen sections of land in township four north, range nine west, included in the engrossed bill, were omitted from the enrolled bill signed by the Governor.

Appellee filed answer, joining issue upon the material allegation set out in the complaint.

The cause was submitted to the court upon the merits, and, by decree, the act was upheld as valid; whereupon the court dismissed appellant's bill for the want of equity, from which dismissal an appeal has been duly prosecuted to this court.

The undisputed facts are that Senate Bill No. 509 which is the bill in question, passed both houses of the Legislature in the words and form as originally introduced, without modification or change in any respect; that the enrolled act of said Senate bill was approved by the Governor on April 3, 1919, on the twenty-first day after the adjournment of the Legislature, and was numbered Act 669 of the Acts of 1919; that the enrolled bill omitted from the engrossed bill, or the bill passed by both houses of the General Assembly, nineteen sections of land in township four north, range nine west, which appeared in the engrossed bill as one of seven paragraphs describing the lands within the district; that the road to be improved runs from the town of Cabot, which is in township four north, range nine west, to the public road in Improvement District No. 4; that the lands omitted from the enrolled bill were adjacent to the towns of Austin and Cabot, included in the bill, and to the road to be improved in said township and range; that the original, as well as the enrolled, bill is in the official archives of the Secretary of State, and was published by the Secretary of State as the law, including the omitted nineteen sections of land; that there is nothing on the journal records of either the House or Senate showing when the enrolled bill was presented to the

Governor; that, under the rules, it was the duty of the Senate Enrolling Committee to present the bill to the Governor for approval.

The first question to be determined is whether the bill was presented to the Governor for approval within the time required by section 15, article 6 of the Constitution. That section requires that bills must be presented to the Governor within twenty days after adjournment of the session at which passed. *Monroe* v. *Green,* 71 Ark. 527. The record in the case just cited showed that the bill was presented to the Governor twenty-three days after the Legislature adjourned. In the instant case, the record is entirely silent as to when the bill was presented to the Governor for approval. This court will indulge the presumption, where the contrary does not affirmatively appear from the records of the General Assembly, that the Senate enrolling committee performed the duty imposed upon it to present the bill to the Governor within the time required by law for his consideration and approval or rejection. This rule of presumptions in favor of the validity of legislative enactments can not be more clearly stated than was done in the case of *Harrington* v. *White,* 131 Ark. 291. The rule formulated there is as follows: "An act of the Legislature signed by the Governor and deposited with the Secretary of State raises the presumption that every requirement was complied with, unless the contrary affirmatively appears from the record of the General Assembly." The rule thus announced is sustained by the cases of *Chicot County* v. *Davies,* 40 Ark. 200; *Glidewell* v. *Martin,* 51 Ark. 559; *State* v. *Corbett,* 61 Ark. 226; *State* v. *Bowman,* 90 Ark. 174; *Mechanics Building & Loan Association* v. *Coffman,* 110 Ark. 269; and has been reannounced and sustained in the recent cases of *Perry* v. *State,* 139 Ark. 227, and *Helena Water Co.* v. *Helena,* 140 Ark. 597. The reason of this rule of presumptions is grounded in public policy and respect of a co-ordinate department of government, so said Mr. Justice SANDELS in the case of *Glidewell* v. *Martin,* 51

Ark. 559. The reasons for the rule are so clearly and ably expressed by that profound master of law, the writer can not refrain from indulging in the following quotation from him:

"From considerations of public policy and because of the respect due the action of a co-ordinate department of government, the courts, long since, began to supply the omissions of journal clerks by presumptions as to the regularity of the proceedings of the General Assembly. This has been found most salutary, and the attitude assumed by the judiciary in this regard, has gone far toward establishing and maintaining public confidence in the stability of legislative action. Many cases of flagrant hardship are thus prevented, while by the operation of the rule, few, if any, have sustained substantial injury. The courts are gravitating toward the English rule so thoroughly discussed by Mr. Justice Smith, in *Chicot County* v. *Davies,* 40 Ark. 200; for while they say that the enrolled bill is not conclusive of the valid enactment of the law, and that we may look beyond it to the journals, they supply by presumption everything necessary to its validity, save where the journal affirmatively shows a violation of the Constitution."

It is suggested that the presumption must be indulged that the bill was presented to the Governor more than twenty days after the *sine die* adjournment of the Legislature because approved by the Governor more than twenty days thereafter. The approval of the bill by the Governor after the time fixed by law was unauthorized and in no wise affected the bill. Presumptions should not be founded on the unauthorized acts of officials. Presumptions are not indulged to strike down laws, but the validity of laws may be upheld by them. We think the only effect resulting from the unauthorized approval of the bill by the Governor was to corroborate the presumption that it was presented to him. In other words, the approval of the bill by the Governor lends credence to the presumption that the enrolling committee performed its duty by presenting the bill to him

within the time required by law. It will be presumed therefore that the bill in question was presented to the Governor within twenty days after the *sine die* adjournment of the Legislature, and, not having been vetoed, became a law twenty days after said adjournment without his signature.

The chief insistence for reversal is that the bill approved by the Governor was a different bill from the bill passed by the Legislature. An enrolled bill, in legislative parlance, is a reproduction or copy of the identical bill passed by both houses of the General Assembly. The enrolling clerk, or committee, has no power or authority to modify a bill passed by the General Assembly in any respect. It follows that the purpose and intention of the Governor in signing an enrolled bill, or in allowing an enrolled bill to become a law without his signature, is to approve the bill passed by both branches of the Legislature, or to acquiesce in such bill becoming a law. In approving an enrolled bill, therefore, it may aptly be said that the Governor intends to, and does, approve the original or identical bill passed by the General Assembly. For this reason, additions, omissions or misprisions of the enrolling clerk in copying the bill to be signed by the Speaker of the House and President of the Senate and to be presented to the Governor, do not impair or invalidate the act. Otherwise, legislation would depend entirely upon the accuracy of the enrolling clerk and care of the enrolling committee. No rule of law is better established in this State than the rule to the effect that an enrolled bill is not conclusive of what bill was enacted. An enrolled bill may be impeached by an inspection of the original bill, indorsements thereon, journals and other official records of the Legislature and official records in the office of the Secretary of State. *Arkansas State Fair Association* v. *Hodges,* 190 Ark. 131; *Helena Water Company* v. *Helena* 140 Ark. 597; *Booe* v. *Road Improvement District No.* 4, 141 Ark. 140. If an enrolled bill signed by the President of the Senate and Speaker of the House

is not conclusive and determinative of what bill was enacted by the General Assembly, no sound reason can be assigned why it should be conclusive and determinative of what bill the Governor approved. In other words, the additions, omissions or misprisions contained in an enrolled bill should not bind the Governor to the letter of the copy by reason of his approval any more than the Senate and House whose President and Speaker signed it. In the case of *Haney* v. *State,* 34 Ark. 263, this court corrected a manifest and material error in an enrolled bill which had been signed by the President of the Senate and Speaker of the House and the Governor, by inserting the word "fourth" for the word "fifth" so as to make the act conform to the intention of the Legislature in enacting, and the Governor in approving, it. The correction made to conform to the intention of the Legislature and Governor was material, because, unless made, the act was void. In making the correction, the court took occasion to say: "A mistake of this nature may be corrected by the courts, upon as sound principle as a mistake in a deed. It is not judicial legislation, nor judicial interference with the legislative will. It is in support of the legislative will, and wholly distinct from the reprehensible practice of warping legislation to suit the views of the courts as to correct policy." The court, however, in making this correction threw out the warning that before correcting a bill so as to conform to the intention of the Legislature, "courts should be thoroughly and honestly satisfied of the legislative intent, irrespective of the policy of the act."

It is apparent from the face of the enrolled bill that lands in township four north, range nine west, are intended to be included but were omitted in copying from the original bill. This is evidenced by the fact that the town of Cabot, in said township and range, is included in the district. Certainly, the town would not have been included in the district and the adjacent lands omitted. It is also evidenced by the fact that the road to be improved runs from Cabot to Lonoke, and, in doing so,

passes through said township and range. It could not have been the intention to exclude lands adjacent to the proposed road in said township and range. By reference to the original bill published by the Legislature, it is apparent that the enrolling clerk omitted to incorporate in the enrolled bill the paragraph in the original bill describing nineteen sections of land traversed by the proposed road. The paragraph was in the original bill and rendered the district symmetrical in form. It is true the omission from the enrolled bill constituted a material discrepancy between the enrolled and the original bill, but, nevertheless, the omission was a clerical error, apparent from the face of the bill, and what should have been incorporated in the enrolled bill is ascertainable from an inspection of the original bill in the office of the Secretary of State. Concerning just such an omission from an enrolled bill, or perhaps of one more material than in the instant case, this court used the following language in the case of *Athletic Mining & Smelting Co.* v. *Sharp,* 135 Ark. 330: "It is said that the words included in brackets in the fourth and fifth lines of section 2, Act 175, Acts 1913, were placed in the act by the Secretary of State without authority, and that when the section is read eliminating those words, it is clear that the Legislature intended to take away the defense of contributory negligence only in death cases brought against corporations for damages. Eliminating those words from the section, appellant is perhaps correct in his contention that the act would apply only in death cases, but upon examination of the original act in the office of the Secretary of State, we find that those words inserted by the Secretary of State were a part of the act, and were inadvertently omitted from the enrolled bill by the enrolling clerk. Without the use of the words inclosed in brackets, the section is almost meaningless or at least quite ambiguous. The failure to insert the words was an obvious omission or misprision of the enrolling clerk. The Secretary of State therefore properly inserted them in the printed act."

The case last cited is directly in point and rules the instant case in this regard.

The judgment is affirmed.

McCulloch, C. J., and Hart, J., dissenting.

Smith, J. (concurring). I agree that under the facts here stated the presumption should be indulged that the bill in question was presented to the Governor within twenty days after the adjournment of the Legislature and, not having been vetoed, became a law without the Governor's signature.

But the proposition, that a bill can become a law when the Legislature has passed one bill and the Governor has approved another, is, in my opinion, so fundamentally unsound that I must express my dissent, and, in doing so, explain my vote in upholding the act.

In my opinion the case of *Athletic Mining & Smelting Co.* v. *Sharp,* 135 Ark. 330, is controlling here. I dissented in that case, and have endeavored here, with all the earnestness I possess, to show the majority the unsoundness of the rule there announced, and here reaffirmed, but without success. The majority has deliberately reaffirmed that case, and I am as much bound by it as if it had my approval, and upon the authority of that case I must vote to uphold this act, because I can draw no distinction between that case and this one.

The decision is, however, so contrary to sound legal principle, and so void of support in precedent (I say this with the greatest respect for the views of the judges who make the opinion on that subject), and is of such vital importance as a question of polity, in that it nullifies, in a measure, at least, a constitutional prerequisite in enacting our laws, that I am constrained to express my dissent.

The Constitution does not contemplate that the Legislature alone can enact laws. Upon the contrary, as well said by the Supreme Court of Alabama in the case of *Moog v. Randolph,* 77 Ala. 597: "The clear logic of the case lies in the axiom, that a bill is *an entirety,*

and a law is the product of the combined, harmonious and unanimous action of the legislative and executive departments of Government, each acting strictly within the scope of its constitutional authority, and according to the prescribed forms of the constitutional mandate. When, therefore, as we have said, the measure assented to by one of these departments is not, in substance and legal effect, the measure assented to by the other, but differs from it materially in its operation as a law, it is in no proper sense a constitutional or valid enactment.''

In the opinion in the instant case we have all recognized the necessity of executive consideration and approval before a bill can become a law; but what becomes of that executive function and prerogative, if it is not essential that the Governor consider and act upon the same bill passed by the Legislature?

Here, admittedly, the Legislature passed one bill, and the Governor approved another, for the majority opinion makes the difference between the two bills, and the materiality of the difference between the two bills, very patent, for it is there said: ''By reference to the original bill published by the Legislature, it is apparent that the enrolling clerk omitted to incorporate in the enrolled bill the paragraph in the original bill describing nineteen sections of land traversed by the proposed road.'' And, in addition to this recital of fact, the majority opinion expressly states that ''It is true the omission from the enrolled bill constituted a material discrepancy between the enrolled and the original bill.''

This statement follows the premise, found in the majority opinion, that ''In approving an enrolled bill, therefore, it may aptly be said that the Governor intends to, and does, approve the original or identical bill passed by the General Assembly.'' From a premise so unsound no correct conclusion could be expected.

No doubt the Governor might approve the original bill, if it were presented to him for his approval; but here the original bill was not presented to him. Upon

the contrary, a materially different bill was presented to him for his approval. Are we warranted in assuming that the Governor is a mere automaton, whose business it is to sign anything presented to him? Is it not the theory of the Constitution that the Governor shall exercise an independent and intelligent judgment in considering and approving bills which are to become laws, and is he not warranted in basing that consideration upon the bill presented to him, and does he not have the right to assume that the bill presented to him for his consideration and approval is the very bill which the Legislature has passed? Have we not here sustained the very act under review by indulging the presumption that officers do their duty, and if there is such a presumption may the Governor not rely upon it in determining what action he will take upon a particular bill, or any bill, presented to him for his approval? And is it to be assumed that, because he is willing to give assent to the bill becoming a law which is presented to him, he would also assent that any other bill dealing with the same subject, although materially different, should likewise become a law?

In my opinion this was not the conception of the executive function entertained by the framers of our Constitution, who, in writing section 15, of article 6, of the Constitution, dealing with the subject, provided that "Every bill which shall have passed both houses of the General Assembly shall be presented to the Governor; if he approve it, he shall sign it; but if he shall not approve it, he shall return it, with his objections * * *."

In addition to the case of *Athletic Mining & Smelting Co.* v. *Sharp, supra,* the majority opinion cite, as supporting their view, the cases of *Arkansas State Fair Assn.* v. *Hodges,* 120 Ark. 131; *Helena Water Co.* v. *City of Helena,* 140 Ark. 597; *Booe* v. *Road Improvement Dist. No. 4,* 141 Ark. 140; *Haney* v. *State,* 34 Ark. 263. An examination of these cases will disclose the fact that, with the exception of the case of *Athletic Mining & Smelting*

*Co.* v. *Sharp,* none is relevant to the point under discussion, for in none of those cases was it contended that the Legislature had passed one bill and the Governor had approved a different one.

An infinite number of cases may be found like that of *Haney* v. *State,* from which the majority quote, in which ambiguous acts have been construed for the purpose of extracting the legislative intent; but it is quite obvious that is not the point now being considered.

In this connection, I must be permitted to say that, because of the importance of the point involved, I have made a very diligent search of the authorities, and have found no case, except that of *Athletic Mining & Smelting Co.* v. *Sharp,* which supports the proposition that a bill approved by the Governor, materially different from the one passed by the Legislature, becomes a law. I do not refer to the cases decided in jurisdictions holding that the enrolled act is conclusively presumed to be regularly enacted; but my reference is to the decisions of the courts in those States having our rule, that published acts may be impeached by records of which we may take judicial knowledge.

There are a great many cases dealing with the materiality of the difference between the bill passed by the Legislature and that approved by the Governor, in some of which it was held that the difference was material and in others that the difference was not material. But the controlling point in all of those cases was that of materiality, and it was held, without exception, so far as I am advised, that if the bill passed by the Legislature is materially different from that approved by the Governor no valid act has been passed.

The rule is stated in volume 1 of Lewis' Sutherland Statutory Construction, section 52, as follows: "When it appears that the bill passed by one branch of the Legislature was in materially different terms from the bill passed by the other branch; or when one branch wholly failed to pass it; or when the bill approved by

the Governor and authenticated as the law requires is materially different from the bill passed by the two houses, it will be held a nullity.''

See, also, cases cited in note to this section; and see, also, the Am. & Eng. Enc. of Law (2 Ed.), vol. 26, pages 546 (d) and 547 (c); Century Digest, vol. 44, columns 2327, 2328, 2329, 2330; Decennial Digest, vol. 18, p. 751, § 39; 36 Cyc. 966, note 77.

Among the cases to which our attention has been called is that of *Bennett* v. *Johnson,* 130 Ark. 507. But the point there was that certain lands had been twice described in the act, and we held this as an obvious error. But neither in that case, nor in any other case to which my attention has been called prior to that of *Athletic Mining & Smelting Co.* v. *Sharp, supra,* has it ever been held that it is immaterial that the Governor does not sign the same, or substantially the same, bill passed by the Legislature, if the variance arises out of a mere clerical error or misprision of an enrolling clerk or other clerical officer.

The true rule is that the cause of the error or misprision is unimportant—the Governor must approve the same, or substantially the same, bill which has been passed by the Legislature; and if there is a difference the determining test is that of materiality. If there is a material difference, the bill does not become a law, and the cause of the difference is wholly unimportant. Our own recent case of *State* v. *Crowe,* 130 Ark. 272, recognizes the necessity of presenting to the Governor for his approval the identical bill passed by the Legislature.

I, therefore, vote to uphold the act under consideration, but I do so only because of the binding effect of the prior decision of this court in the case of *Athletic Mining & Smelting Co.* v. *Sharp, supra.*

Upon this branch of the case I am authorized to say that the Chief Justice concurs in the views here expressed.

HART, J. (dissenting): Under article 6, section 15, of our Constitution, bills which have passed both house of the General Assembly must be presented to the Governor for his approval.

In *Dow* v. *Beidelman,* 49 Ark. 325, it was held that a bill that has passed both houses may be presented to the Governor for his approval after the final adjournment of the General Assembly.

Joint rule 12 of the last General Assembly adopted at its regular session reads as follows: ''When a bill has been signed by the Speaker of the House, and President of the Senate, it shall be delivered to the Governor by the joint committee on enrolled bills, who, through their chairman, or some member of the committee, shall report to the house in which the bill or resolution originated, the day on which the same was delivered, and the report shall be entered on the journal of such house.''

The rules were adopted pursuant to article 5, section 12, of the Constitution, which provides that each house shall have the power to determine the rules of its proceedings.

It further provides that each house shall keep a journal of its proceedings. I think that it is plain that under the clause of the Constitution just referred to that this rule has the force of law. It was made to give full operation to the Constitution. Therefore the court can take judicial notice of the legislative record and ascertain when the bill under consideration was presented to the Governor. The Joint Committee on Enrolled Bills took a receipt from the Governor's office when the bill was presented to him, and that receipt shows the date of its presentation. It is true the date of the presentation of the bill has not yet been recorded in the journal; but the delay or failure even of the proper officers to do this should not prevent the court from having the benefit of that record for the purpose of ascertaining when the bill was presented to the Governor. The record of

the date the presentation was actually made and is kept by the secretary of the Senate in the case at bar, the bill presented having originated in the Senate. This is not in the nature of parol evidence, but is a written record of the date of the presentation of the bill given by the Governor's office to the Committee on Enrolled Bills under the rules of procedure of the Legislature adopted pursuant to a provision of the Constitution, and constitutes a part of the official record of the history of the bill of which the court may take judicial notice. It shows that the bill was presented to the Governor before the twenty days had expired, but the Governor did not sign the bill until after twenty days had expired. As said by Judge Battle in *Monroe v. Green,* 71 Ark. 527, the presentation required by the Constitution is for the purpose of enabling the Governor to examine it and to determine whether he will approve or veto it. The fact that the Governor signed the bill shows that he wished to approve it, but the fact that he signed it after twenty days had expired shows that it was not presented to him in time to inspect and consider it in the orderly dispatch of the business of his office within the twenty days allowed by the Constitution. Therefore I respectfully dissent from the opinion which holds that the bill become a law.

McCulloch, C. J. (dissenting). I am fully in accord with the views expressed by Mr. Justice Smith in his concurring opinion to the effect that the approval by the Governor of an enrolled bill materially different from that passed by the two houses of the General Assembly renders the enactment void. I dissent from the conclusion of the majority on that ground, for there is no rule of property involved in the decision of the court in the case of *Athletic Mining & Smelting Co.* v. *Sharp,* 135 Ark. 330, and I am so thoroughly convinced of its incorrectness that I think it ought to be overruled at this time. The conclusion announced in that case is directly opposed to the plain mandate of the Constitution.

which makes the Governor an essential part of our scheme of legislation in that it provides that each bill must be presented to him for his opproval. If a materially different bill is presented to the Governor, then he is given no opportunity to approve or disapprove the legislation sought to be enacted by the two houses of the General Assembly.

I dissent on the further ground that the record does not show that the bill was presented to the Governor within the time required by the Constitution, and that no presumption can be indulged, under the circumstances of this case, that there was such presentation. The Chief Executive is, as before stated, an essential factor in our legislative scheme, and this results from the plain mandate of the Constitution which requires that all bills must be presented to the Governor, and specifies the time within which this must be done.

All of us are agreed that no bill can become a law unless presented to the Governor within the time specified in the Constitution. This constitutional mandate necessarily charges each of the branches of the Legislature with the duty of complying with all the requirements necessary to complete the enactment so as to make it a valid law. This includes the duty, not only to pass a bill through the two houses of the Legislature, but to present it to the Governor within the time specified. There is no initiative put upon the Governor with respect to the enactment of laws, and he is only required to receive and consider a bill when presented to him for his approval. The duty, therefore, rests upon the General Assembly, not only to present a bill to the Governor, but also to make a record whereby the evidence of that fact may be preserved so that there can be no uncertainty about the proper enactment of a law. The framers of the Constitution doubtless contemplated that in authorizing the two houses of the General Assembly to make rules some method would be provided for preserving the records of the persentation of the bills to the

Governor. Such a rule was provided with respect to bills presented to the Governor during the session of the Legislature, but this rule does not seem to apply to the presentation of bills by the enrolling committee after the adjournment of the Legislature. If a bill, after being presented to the Governor in apt time, is neither approved nor vetoed by him, it becomes a law notwithstanding, but there is no provision in the Constitution itself imposing an affirmative duty on the Governor in such a case, and unless the General Assembly by rule, or by an enactment of some kind, provides a method of placing on record the fact that a bill has been presented to the Governor, there is no way for the courts to ascertain whether or not the requirements of the Constitution have been complied with. Where the Governor signs a bill within the time prescribed by law and places it in the archives, there is a conclusive presumption that the bill was presented to him in time; but if he fails to so deposit the bill, or if he signs it and files it with the Secretary of State after the expiration of the time, then there should be no presumption that it was presented to him within time.

There is a presumption that the Governor performed his duty in the manner required by the Constitution, and since this bill was not signed by the Governor and by the presiding officers of the two houses of the General Assembly until the twenty-first day after the adjournment of the Legislature, the presumption should be indulged that the bill was not presented to the Governor in time to give him an opportunity to examine and approve it within twenty days after the adjournment. If we are to indulge the presumption that the enrolling committee discharged its duty by presenting the bill in apt time, this necessarily carries with it the presumption that the Governor failed to discharge his duty by examining and approving the bill within the required time. The majority, therefore, in adopting one presumption have broken down another. Let us suppose

a case where the Governor has vetoed a bill after the expiration of twenty days from the adjournment of the Legislature. Of course, his veto would be ineffectual, but would there still be a presumption indulged that the bill had been presented to the Governor in apt time, and that he had waited until after the expiration of his time so as to make his veto ineffectual? All of this goes to emphasize the necessity of providing some method whereby the presentation to the Governor can be manifested upon some permanent record, and not leave it merely to conjecture or presumption.

I think it is better that this particular statute, and all others in like situation, should fail rather than to establish a precedent which will afford an opportunity to nullify a plain provision of the Constitution and render highly uncertain an important function which the framers of the Constitution placed upon those who are charged with the duty of enacting laws.