FORD *v.* PLUM BAYOU ROAD IMPROVEMENT DISTRICT.

Opinion delivered February 18, 1924.

1. STATUTES—CLERICAL ERROR IN ENROLLED BILL.—Clerical mistakes in the enrolled copy of a bill signed by the Governor, by erroneous additions, omissions or misprisions, do not invalidate the act. So *held* where the enrolled bill signed by the Governor, by a clerical misprision, omitted three half sections of land described in the engrossed bill.

2. STATUTES—PRESUMPTION OF REGULARITY OF ENACTMENT.—The presumption of the correctness and regularity of the proceedings of the Legislature on file in the office of the Secretary of State may be overcome only by clear and decisive proof, and the mere fact that the engrossed copy of a bill bears evidence on its face of having been taken apart, was insufficient to impeach its integrity, even in connection with oral testimony as to changes having been made.

3. HIGHWAYS—REASONABLENESS OF ASSESSMENTS.—In a proceeding attacking the validity of an assessment for road improvement, where the testimony as to the reasonableness of the assessment was conflicting, the finding of the board of commissioners and the chancellor that the assessments were reasonable will not be disturbed, as the question of benefits is largely a matter of opinion.

4. HIGHWAYS—ZONE SYSTEM OF BENEFITS.—The adoption of the zone system in assessing the benefits from a road improvement district for construction of roads does not render the assessment invalid, unless it is shown in a direct attack that it is excessive or discriminatory.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*H. T. Wooldridge,* for appellants.

1. The enrolled bill, though not conclusive of what bill the Legislature passed, is, none the less, the best evidence. It is more authentic and should govern, unless it clearly appears that the wording of it is due to some mistake of the enrolling clerk; and the burden was on the district in this case to show such mistake. 142 Ark. 73. The district is void under the enrolled bill because of the gap in the district of half a mile in the south half of sections 1, 2 and 3, township 3 south, range 10 west. 130 Ark. 70; 139 Ark. 574; 143 Ark. 83. The testimony of a representative in the Legislature as to what was intended by an amendment to a bill is not admissible. 66 Ark. 466; 76 Ark. 197; 109 Ark. 556, 563. The courts have no power to legislate, but only to construe. If the language of an act is plain and unambiguous, no room is left for construction. 89 Ark. 513; 35 Ark. 56; 11 Ark. 44; 110 Ark. 99, 103. 2. The published act is void because it was never passed by the Legislature, nor signed by the Governor.

*Coleman & Gantt,* for appellees.

1. The act creating the district is valid. 142 Ark. 454; 135 Ark. 330. If the amendment made by the Senate related to lands in township 4 south, range 10 west, and that appears from the evidence to be true, it follows that the bill passed the Senate just as it has been published by the Secretary of State. On March 6 it was returned to the House, where the Senate amendment was concurred in. That completed the passage of the act. 130 Ark. 272; 110 Ark. 269; 61 Ark. 226.

2. With reference to the contention that the published act is void because the Governor did not sign it, which was due to an error of the enrolling clerk, the same is presented as in the case of *Rice* v. *Road Improvement District,* 142 Ark. 454, 459, which fully refutes that contention. See also 135 Ark. 330; 110 Ark. 269; 130 Ark. 503. This court has never followed the English rule that

the enrolled bill is conclusive. On the contrary, it adheres
to the doctrine that the courts may look beyond the
enrolled bill to the legislative journals, and that, where
the intention of the Legislature is clear, errors may be
disregarded.   19 Ark. 250; 103 Ark. 109; 34 Ark. 263,
269; 40 Ark. 200; 110 Ark. 274; 44 Ark. 536.

3.   Under the act creating the district, the commis-
sioners were required to assess the value of benefits to
accrue to each tract of land by reason of the improve-
ment.   It was open to the assessors to adopt any method
which, in their judgment, reached the true measure of
benefits, i. e., the effect of the proposed improvement
upon the market value of the lands.  86 Ark. 1; 1 Page
& Jones on Taxation by Assessment, § 11; 139 Ark. 322;
59 Ark. 536; 64 Ark. 258.   The question is not the distri-
bution of the cost over the lands in the district, but the
extent to which the lands will be benefited by making the
improvement.   86 Ark. 1; 122 Ark. 326.   The cost of the
proposed improvement was to be considered in fixing the
total amount of benefits.   If the assessors did not assess
any land above the amount it would, in their judgment,
be benefited, and made their assessment on an equitable
basis, they were within the law; it was not necessary to
assess the lands to the full extent they would be bene-
fited, unless the cost of the improvement required that to
be done.   134 Ark. 315; 122 Ark. 330.   The zone system
of assessment is not invalid, unless arbitrary and in dis-
regard of actual benefits to accrue.   151 Ark. 484; 137
Ark. 568; 139 Ark. 322; 122 Ark. 326, 334.

McCULLOCH, C. J.   The numerous appellants in this
case are each owners of real property within the bounda-
ries of appellee road improvement district, which was
created by a special statute enacted by the General
Assembly in 1923, Special Acts, 1923, p. 1062.   The
public road to be improved under the provisions of
the statute, and described therein, runs from Sherrill,
a town on the line of the St. Louis Southwestern Railway
Company, nearly parallel with the railroad, to the town
of Tucker, thence west and northwesterly to Plum Bayou,

thence northeasterly to the Lonoke County line. The statute also authorizes the improvement of two short laterals—one northward from the main road to Ferda, a station on the line of the railroad, and another southward from Plum Bayou, on the west end.

The commissioners of the district, after forming plans for the construction of the improvement, proceeded to appraise the benefits to the lands in the district, and, after the same were approved, appellants instituted this action in the chancery court of Jefferson County, attacking the validity of the statute, and also the correctness of the assessment of benefits.

The statute provides that the commissioners of the district, after publishing notices of the time and place of hearing, shall equalize and adjust the assessments, and that their determination shall be final, "unless suit is brought in the Jefferson Chancery Court, within thirty days thereafter, to set aside their finding." This action was instituted within that time, and therefore constitutes a direct attack upon the validity of the assessments.

The chancellor heard testimony as to the correctness and validity of the assessment of benefits, as well as on certain phases of the case which related to the validity of the statute itself, and rendered a final decree dismissing the complaint of appellants for want of equity. An appeal has been duly prosecuted to this court.

The validity of the statute is assailed on the ground that there is a material variance between the enrolled copy signed by the Governor and the bill which passed the two houses of the General Assembly, and that, according to the enrolled bill thus signed, there is omitted from the statute three half-sections of land situated in the heart of the district, two of which abut on the main road to be improved, and that this brings the case within the rule announced by this court concerning the omission of lands which would necessarily be benefited by a proposed improvement. *Heinemann* v. *Swealt,* 130 Ark. 70; *Milwee* v. *Tribble,* 139 Ark. 574.

The facts with reference to the enactment and approval of the statute, as shown by the records on file in the office of the Secretary of State, are as follows: The bill for this statute originated in the House of Representatives, and, as introduced and passed by the House, the boundaries of the district included lands (three half-sections described as south half of sections 1 and 2; and, east of river, south half of section 3, in township 3 south, range 10 west), which were omitted from the enrolled bill signed by the Governor. When the bill reached the Senate, it was amended so as to shorten the lateral road running south from Plum Bayou by cutting off of it a distance of one mile, and lands described as the south half of sections 1 and 2, and, east of river, south half of section 3, township 4 south, range 10 west, were excluded from the district. The bill as amended was finally passed by the Senate, and returned to the House, where the amendments were concurred in, and the bill was engrossed. The engrossed bill now on file in the office of the Secretary of State includes the three tracts described as in township 3 south, range 10 west, and omits the tracts described by corresponding numbers in township 4 south, range 10 west. On the other hand, the enrolled bill signed by the Governor omits the half-sections mentioned as in township 3 south, range 10 west, but includes the half-sections with corresponding numbers in township 4 south, range 10 west. The Secretary of State published the statute in accordance with the boundary descriptions set forth in the engrossed bill, and not in accordance with the description in the enrolled bill. The description in the engrossed bill, which is on file, as before stated, corresponds with the Senate amendments to the original bill.

Appellants attempted to impeach the correctness of the engrossed bill by introducing a witness who testified that he compared the engrossed bill with the enrolled bill while the latter was in the hands of the Governor for his approval, and that the boundary descriptions in the

engrossed bill at that time corresponded with the descriptions in the enrolled bill.

There is also testimony to the effect that the engrossed bill in the office of the Secretary of State bears some evidence of having been taken apart, the marks showing that the brads had been removed and replaced. The effort is to show that the engrossed bill has been changed since it was filed in the office of the Secretary of State.

There is a conflict in the testimony as to the form in which the engrossed bill appeared at the time the enrolled bill was in the hands of the Governor, and as subsequently filed in the office of the Secretary of State.

If there was an error in the enrollment of the bill, it was a clerical one, which is obvious in comparing it with the engrossed bill, the original bill and the Senate amendments as concurred in by the House. This court is committed to the rule that clerical mistakes in the enrolled copy of a bill signed by the Governor, by erroneous additions, omissions or misprisions, do not defeat the validity of the statute. This was first decided in the case of *Athletic M. & S. Co.* v. *Sharp,* 135 Ark. 330, and, after full reconsideration of the subject, the court reaffirmed the rule in the case of *Rice* v. *Lonoke-Cabot Road Imp. Dist.,* 142 Ark. 454. We must therefore treat the question as settled.

The attempt to impeach the correctness and integrity of the engrossed copy of the bill is futile, for the evidence is, we think, insufficient to sustain the attack. There is a presumption in favor of the correctness of the records of the proceedings of the General Assembly remaining on file in the office of the Secretary of State, and alleged mutilation of the records must be shown by something more than a mere preponderance of the testimony. In order to overcome the presumption of the correctness and regularity, proof must be adduced which is clear and decisive. The mere fact that the engrossed copy now bears some evidence on its face of having been taken apart is not at all sufficient to impeach the correctness

of the document, even in connection with oral testimony as to changes having been made. In addition to the presumed regularity of the engrossed copy of the bill, there is the added fact that it corresponds with the original bill and the Senate amendments. Our conclusion is that the attack on the validity of the statute is not well founded.

This brings us to a consideration of the attack on the assessment. The commissioners adopted the zone system, and fixed a flat rate of eighteen dollars per acre on lands within one mile of the road to be improved, sixteen dollars per acre on lands one mile and not more than two miles distant, and fourteen dollars per acre on lands more than two miles distant. The territory embraced in the district extends from the east bank of the Arkansas River to the tier of half-sections on an average of two and one-half miles east of the St. Louis Southwestern Railway Company's line, and from the Lonoke County line south to the northern tier of sections in township 4 south. The area includes, mostly, alluvial lands in the Arkansas River bottoms, most of which are low and wet, but which have either been drained or are about to be drained by ditches, some of which are quite extensive. There are also bayous and brakes containing water. The lands are mostly in cultivation, the area containing many large farms, some of the largest of which are owned by some of the appellants.

The witnesses introduced on the question of anticipated benefits from the proposed improvement were quite numerous, and there is great contrariety of opinion. The witnesses introduced by appellants testified that the assessments are unequal, for various reasons given, and that all are in excess of the real anticipated benefits. On the other hand, the witnesses introduced by the district—they are more numerous than those introduced by appellants—all testified that the benefits which the lands in the district will derive from the improvements are considerably in excess of the assessments actually made by the commissioners, and that there is no discrimination

between the different classes of lands in the district. There is also the same contrariety of opinion with regard to the adoption of the zone system. The commissioners testified that, after careful consideration of all the elements which they thought might go to make up the question of benefits, they adopted the zone system as one that is fair and just and will bear equally upon all the property in proportion to benefits. In other words, they testified that, after consideration of all the elements, they reached the conclusion that distance from the road was a fair method of fixing the benefits. Appellants are more insistent, concerning the lack of uniformity of assessments, in the contention in regard to lands which are distant from the road, and that the road is inaccessible from these lands on account of the character of the soil and the intervention of bayous, drainage ditches, and other streams of water.

After giving full consideration to all the testimony in the case, we are unable to say that the assessments are erroneous. The question of benefits, like the question of market value, is largely a matter of opinion. All of the witnesses in the case are men who are familiar with the area in question and the character of the land, and appear to be equally intelligent. It is, after all, a question of difference of opinion between the witnesses, and those introduced by the district are more numerous —about double the number introduced by appellant— and they give as good reasons for their opinions as do the witnesses introduced by appellants. In addition to this, we have the findings of the board of commissioners, to whom the law has primarily committed the duty of appraising the benefits, likewise the finding of the chancellor on all of the testimony which is now before us. We have decided in many cases that the adoption of the zone system does not render an assessment invalid, unless it is shown, in a direct attack on the assessment, that it is excessive, erroneous or discriminatory. *Road Improvement Districts* v. *Crary*, 151 Ark. 484; *Davis* v. *Road Improvement District, ante* p. 98.

The following decisions of this court are especially applicable in the disposal of the contention of appellants with respect to the alleged excessiveness of the assessed benefits and discrimination therein; *Rogers* v. *Ark.-La. Highway Imp. Dist.*, 139 Ark. 322; *Wilkinson* v. *St. Francis Road Imp. Dist.*, 141 Ark. 164; *Reisinger* v. *Road Imp. Dist.*, 143 Ark. 341; *Hines* v. *Road Imp. Dist.*, 145 Ark. 382.

We find no error in the decree, and the same is therefore affirmed.

HART, J., (dissenting).  This is a direct attack on the assessment of benefits made within the time prescribed by the statute, and, in the judgment of Judge WOOD and myself, practically the undisputed facts show that the zone system, or the frontage rule of assessing benefits, is discriminatory.  This case should cause us to pause before a precedent becomes fixed, beyond judicial power to stop the zone system of assessments, where there is a direct attack upon it and the evidence shows that the assessment of benefits, when considered with reference to the configuration and topography of the earth's surface, makes even an approximation of equality impracticable.

Where the board assesses lands, shown beyond question not to be benefited, in the same proportion as other lands in the same zone, so that the matter could not be one of judgment or a difference of opinion, the inevitable inference is that they have acted upon a mistake of fact or upon an illegal principle of assessment.  This is necessarily true, no matter what the commissioners may testify as to their opinion of the equality of the assessments.

The undisputed evidence in this case shows that some of the lands are separated from the roads to be improved by bayous, drainage ditches and buckshot lands impassable in wet weather, and that a wide detour, in order to avoid these obstructions, is necessary in going to and from the improved roads.  Therefore it is obvious that this should be considered in making the assessments, and that the lands should not be assessed as high as those

which are the same distance in a direct line from the improved roads but which are not separated from the roads by obstructions to travel.

These physical facts are shown by the evidence in the record, which, in our judgment, is not disputed. It is true that witnesses for the defendant say that, in their judgment, the benefits are the same; but we think that their testimony in this regard is arbitrary. No fair and equal assessment of benefits can be made without taking into consideration the drainage ditches, bayous, and other obstructions which necessitate the landowners to go around them or to build a bridge across them before they can use the improved road. They are not required to build bridges, at a prohibitive cost, to cross these obstructions, or, if they should be required to do this, this fact should be considered in making the assessment of benefits. Therefore we respectfully dissent.