## PONDER v. CARROLL.

### 4-4633

Opinion delivered May 3, 1937.

*J. H. Lookadoo*, for appellant.

*P. L. Smith* and *Tom Kidd*, for appellee.

GRIFFIN SMITH, C. J. On the night of November 23, 1935, appellee started on foot from Arkadelphia. A short distance from the city, he was permitted to ride on a wagon drawn by a team of mules, and driven by W. L. Ballard. The way led across the bridge over Caddo River. The bridge, 1,100 feet long and 20 feet wide, is projected north and south over the stream. Appellee was riding on the back of the wagon with his feet "hanging out." At a point near the north end of the bridge appellee got off the wagon, and was struck by an automobile driven by appellant. Appellee gave the following explanation of his actions: "We were driving on

the right-hand side of the road. Before I got off the wagon I looked back toward Arkadelphia to see if I could see a car, and I did not. I got off the wagon right on the bridge. Before I got off, I saw a car coming from the north. When I got off I spoke to the man I was riding with and thanked him for the ride. He looked back and said 'Look out for the car.' He said this just as Mr. Ponder's car hit me. The wagon was 8 or 10 steps from me when the car hit me, and I had not moved to the right or the left after I got off the wagon, before I was hit. I could see a couple of hundred yards down the highway toward Arkadelphia at the place where I got off the wagon, and I did not see any car coming from the south. The car hit me about the knees or thigh, knocked me down and ran over both legs, and broke them. After I received the injuries Mr. Ponder (appellant) carried me to the hospital. He told me at the hospital he could have avoided hitting me, but didn't say how that night. Later he came to see me and said he could have avoided hitting me, but that in doing so he 'might have gotten his car crippled up or himself or somebody in the other car.' The car meeting us had already passed when I got out of the wagon. I did not tell the driver of the wagon I wanted to get off. I could see to the south end of the bridge very easily from where I was sitting on the wagon. I did not see Mr. Ponder's car before it struck me, did not know it was coming, and did not hear any horn. When I stepped off I turned to the west, across the road, but did not walk after I got out of the wagon. I do not know anything about Mr. Ponder hitting me.''

Appellant testified that he was going north across the bridge; that he drove on the bridge in the clear, traveling at 25 or 30 miles an hour. "As I neared the wagon I could see it plainly and could see this old gentleman on it. There was a car or truck coming from the other direction at a rapid rate of speed, and I saw I would not have time to get around the wagon before meeting the truck, so I just dropped behind the wagon. At that time I was traveling about three miles an hour,

and when I got up as close as 10 or 12 feet to the wagon this old gentleman just stepped off the wagon and did not give any signal or warning that he was going to do so. There was nothing in the world to keep him from seeing me coming. He made a step or two toward me, turned sideways facing the east, and my front wheel ran over his feet, knocked him down and injured both legs. When I first saw Mr. Carroll jump off the wagon I began applying my brakes. They were in good condition, but by the time I could apply the brakes I had hit him. In following over the bridge, I had slowed down to the speed of the wagon, and was trailing it when Mr. Carroll jumped off. We took him out from under the car. He said he had nothing to pay a doctor with, and I said, 'I am awfully sorry;' and he replied, 'I don't blame you.' I then told him I would take him to a doctor and get him fixed up and pay the bill. We were 55 or 60 feet from the north end of the bridge when the accident occurred. I told Mr. Carroll that I could not possibly have avoided hitting him. I could not turn to the left on account of the other car, and could not turn to the right on account of the banister of the bridge. I paid $92.50 for doctors' bills, and $10 for X-ray pictures.''

W. L. Ballard, on whose wagon appellee was riding, testified: ''There was a car meeting us, going south. This car that hit Mr. Carroll was right behind my wagon when Mr. Carroll jumped off and was hit. I saw the car behind my wagon some bit before the accident occurred. I turned just in time to see it. When I first saw Mr. Ponder's car he was going very slowly. There was nothing to have kept Mr. Carroll from seeing Mr. Ponder's car that I know of. Later on Mr. Carroll said that I hollered 'Look out for the car,' but I cannot recall whether I said that or not. Mr. Ponder stopped his car in a very short space after striking Mr. Carroll. I did not see Mr. Ponder do anything that would indicate that he was not driving his car in a careful manner. We were meeting the truck just at the time the accident occurred. There was nothing to have kept Mr. Ponder from seeing Mr. Carroll that I know of. I did not hear

Mr. Ponder blow his horn. Mr. Ponder was just a short distance from my wagon when he struck Mr. Carroll."

Horace Runyan, chief deputy sheriff for Clark County, went to the hospital and talked with appellee following the accident. He testified in part as follows: "Mr. Carroll told me that he thought that he looked back toward Arkadelphia, but evidently did not, for in a few minutes from the time he stepped off the wagon the car struck him, and it seemed no one was to blame for it."

In the recent case of *Taggart* v. *Scott, ante,* p. 930, 104 S. W. (2d) 816, appears this declaration of the law: "It is argued that instruction No. 3 was erroneous because it told the jury that negligence, however slight, on the part of appellant, would prevent a recovery by her. The law is that [as between individuals, in contradistinction to corporations—see *Athletic Mining & Smelting Co.* v. *Sharp,* 135 Ark. 330, 205 S. W. 695; Crawford & Moses' Digest, §§ 7140-7145X] it makes no difference how slight the contributory negligence may have been on the part of the appellant, it would defeat a recovery if the injury or damage would not have occurred but for such negligence.

This court said, in the case of *Little Rock & Fort Smith Ry. Co.* v. *Miles,* 40 Ark. 298, 48 Am. Rep. 10, and again in *Hurley* v. *Gus Blass Company,* 191 Ark. 917, 88 S. W. (2d) 850, that "The test of contributory negligence is, did the negligence in any degree produce the injury complained of?"

Admittedly, appellee had an unobstructed view of more than a thousand feet to the south. He was sitting on the back of the wagon, with his feet "dangling" out. Obviously, he was facing south. If he were not facing south, and stepped from the wagon without looking, he was negligent. If facing south, he must have seen appellant's car. Appellee admits that he could see "a couple of hundred yards down the highway, toward Arkadelphia." No one disputes the estimate made by appellant as to the speed he was driving. The witness Ballard, driver of the wagon, saw appellant and his car, and testified: "This car that hit Mr. Carroll was right be-

hind my wagon when the man jumped off and the car ran over him."

Whatever may have been appellee's intentions, admitted physical facts and the incidence of appellee's movements and the position of appellant's car are so completely at variance with appellee's statements as to deprive his testimony of convincing value.

In *Molda* v. *Clark,* 236 Mich. 277, 210 N. W. 203, the court held: "Plaintiff was guilty of contributory negligence as a matter of law. That she testified of looking and seeing nothing is of no avail when the physical facts demonstrate that, had she looked, using ordinary care, she could, and must, have seen defendant's approaching car; and, had she so looked, and used ordinary care, she could have avoided injury."

In *Walker* v. *Earnheart,* 187 Ark. 1110, 63 S. W. (2d) 974, in discussing the relative rights of an automobile driver and a pedestrian, we said: "The general rule is that a pedestrian has the same right to the use of a public street as the driver of a motor vehicle, and that each is obliged to act with due regard to the movements of the other, and neither is required to anticipate the negligence of the other."

It is next contended that appellant admitted to appellee that he (appellant) could have avoided the accident by turning aside. It is undisputed that, at the time in question, a truck, coming from the north, was passing. Appellant said: "I could not turn to the left on account of the other car, and I could not turn to the right on account of the banister."

In *Coca-Cola Bottling Co., of Blytheville* v. *Doud,* 189 Ark. 986, 76 S. W. (2d) 87, this court said: "A motorist suddenly confronted with an emergency created through the negligence of another is not negligent in making choice of a course of conduct to avoid the danger such as one of ordinary prudence under similar conditions might reasonably make, even though it might subsequently appear that another course of conduct would have been wiser."

The record does not disclose any negligence upon the part of appellant. Appellee was negligent in stepping from the wagon without exercising ordinary precautions for his own safety, and the trial court should have directed a verdict in favor of appellant.

Reversed and dismissed.